UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Delicia Johnson, | ) |
| Plaintiff, | ) |
| | ) Case No. 23-cv-92 |
| v. | ) |
| Chicago Transit Authority, | ) |
| Defendant. | ) |

## Complaint

For her complaint against Defendant Chicago Transit Authority (the "CTA"), Delicia Johnson ("Johnson"), by and through her attorneys, states as follows.

## Parties

1. Plaintiff Johnson was formerly a bus operator for the CTA.

2. Defendant CTA is an independent governmental agency which operates the nation's second largest public transportation system in Chicago and 35 surrounding suburbs.

## Jurisdiction and Venue

3. This action arises under the laws of the United States, specifically, the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* and the First and Fourteenth Amendments to the United States Constitution.

4. This action also arises under the laws of the State of Illinois, specifically the Illinois Religious Freedom Restoration Act, 775 ILCS 35, *et seq.*, the Illinois Health Care Right of Conscience Act, 745 ILCS 70, *et seq*; and the Illinois Human Rights Act, 775 ILCS 5/2-102.

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1)(2) because the CTA is headquartered in the Northern District of Illinois and a substantial part of the events or omissions giving rise to Johnson's claims occurred in this District.

**Facts**

7. On or around December 1, 2014, Johnson began working as a part-time bus operator for the CTA.

8. In late 2016, Johnson became a full-time bus operator for the CTA.

9. At all relevant times during her employment with the CTA, Johnson was a dedicated employee who met or exceeded the CTA's legitimate employment expectations.

10. Beginning in late 2019 and early 2020, a global outbreak of a virus now referred to as COVID-19 emerged.

11. COVID-19 was officially declared a pandemic by the World Health Organization in March 2020.

12. At that time, great efforts were made by the public and private sector alike to develop a vaccine.

13. To combat the spread of the virus, public health experts opined that the public should practice social distancing, wear masks, and isolate if showing symptoms of COVID-19. Employers across the country began requiring employees to practice these measures, and many also began permitting remote work.

14. The U.S. Food and Drug Administration eventually granted Emergency Use Authorization for a COVID-19 vaccine, the Pfizer-BioNTech vaccine, on December 11, 2020. The Moderna vaccine was granted Emergency Use Authorization on December 18, 2020. The Johnson & Johnson vaccine was granted Emergency Use Authorization on February 27, 2021.

15. With vaccines available to the general public, employers began to mandate that employees get vaccinated, or else suffer adverse employment action such as being placed on unpaid leave or being terminated.

16. The CTA did not initially require that employees obtain a COVID-19 vaccine. Throughout most of the pandemic, the CTA allowed its employees to continue working by encouraging safety measures, such as masking and social distancing.

17. Johnson, like many other CTA employees, continued to work throughout the pandemic, was viewed as essential worker, and was eventually proclaimed as one of the "unsung heroes of the pandemic" by CTA President Dorval R. Carter Jr. ("Carter Jr.").

18. The lack of a vaccine mandate throughout most of the pandemic did not cause the CTA any undue hardship.

19. On September 3, 2021, approximately 10 months after the first vaccine was authorized, the CTA announced that all CTA employees were required to be fully vaccinated against COVID-19.

20. At that time, Carter Jr. proclaimed that employees had to be vaccinated in order to "help fight off these variants and protect our loved ones and others who cannot be vaccinated."

21. Carter Jr. made that proclamation even though the COVID-19 vaccines were not tested, designed, or made to prevent transmission of COVID-19.

22. The mandatory COVID-19 Vaccination Policy also did not take into account individuals who have already recovered from COVID-19 and thus had antibodies or natural immunity, nor did it take into account alternative measures such as face coverings, personal protective equipment, self-monitoring and reporting of symptoms, or periodic testing.

23. The CTA's mandatory COVID-19 Vaccination Policy was at odds with the Federal government's policy allowing certain large employers to mandate vaccination *or* periodic testing for their employees.

24. The CTA's mandatory COVID-19 Vaccination Policy also differed substantially from the European Union's digital COVID-19 certificate, which considered the following as equivalent: (1) a COVID-19 vaccine; (2) a negative COVID-19 test; or (3) having previously recovered from COVID-19.

25. The CTA has claimed, and still claims, to offer religious exemptions/ accommodations, stating on their "Careers" website the following:

> The CTA complies with all federal and state laws forbidding discrimination and will attempt to provide a reasonable accommodation to otherwise qualified individuals to enable them to perform the essential functions of the job. CTA will make reasonable accommodations for the known disabilities of otherwise qualified applicants for employment as well as its employees, unless undue hardship would result. . . . CTA will work with you to determine if an accommodation can be provided…
>
> If you are an applicant requesting a COVID-19 vaccine religious accommodation or other, please email the Equal Employment Opportunity Unit at EEODiversity@transitchicago.com."

26. In order to obtain a religious exemption/accommodation from the mandatory COVID-19 Vaccination Policy, employees have to complete a "Request For Religious Exemption/Accommodation Related to COVID-19 Vaccine."

27. On September 24, 2021, Johnson completed and submitted her request for a religious exemption/accommodation.

28. In her request for a religious exemption/accommodation, Johnson cited four verses from the Bible and informed the CTA that she was a "Hebrew Israelite, a servant of the Most-High God of Israel."

29. On November 1, 2021, the CTA sent Johnson questions about her request for an exemption/accommodation, seeking additional details.

4

30. On November 7, 2021, in response to the CTA's questions, Johnson wrote, "my beliefs and closely held morals have shaped my life… taking any vaccine is a direct disrespect and contradiction to the God I serve and everything I believe and stand for… my diet, annual observances days, and faith is solely on choosing God's way and not my way nor Man's way… I have never chosen to take a vaccine… I know my healer is God… he has shown me even in very severe cases, and it is due to my belief and faith."

31. Johnson also informed the CTA that, if she received the exemption/accommodation, she would willingly be subjected to regular COVID-19 testing, properly wear a mask, social distance, quarantine if necessary, and disinfect her work area.

32. On November 17, 2021, the CTA denied Johnson's request, writing, "the request does not substantiate a sincerely held religious belief or moral conviction that conflicts with the CTA's requirement that all employees be fully vaccinated against COVID-19."

33. Johnson continued to hold true to her beliefs and continued to refuse, and to this day has refused, to obtain a COVID-19 vaccine.

34. Despite the CTA's insistence that every employee had to be vaccinated in order to work for the CTA, the CTA allowed Johnson to continue working until January 11, 2022.

35. On January 11, 2022, the CTA removed Johnson from service after she confirmed that she had not received the vaccine.

36. On January 18, 2022, the CTA terminated Johnson for failing to get the vaccine.

37. As a result of the CTA's actions, Johnson has sustained damages including, but not limited to, lost income, lost bonuses, lost insurance, lost company benefits, and emotional distress.

**COUNT I – VIOLATION OF TITLE VII, 42 U.S.C. § 2000e,** *et seq.*

38. Johnson hereby realleges and adopts each and every allegation in paragraphs 1-37 as if fully set forth herein.

39. Title VII of the Civil Rights Act of 1964 prohibits the CTA from discriminating against its employees on the basis of their sincerely held religious beliefs. *See* 42 U.S.C. §2000e-2(a)

40. Johnson holds sincere religious beliefs that preclude her from receiving a COVID-19 vaccine.

41. Johnson informed the CTA of those beliefs and requested a religious exemption from/accommodation related to the vaccine mandate.

42. The CTA failed to provide Johnson with a religious exemption/accommodation, thereby discriminating against Johnson because of her religious beliefs.

43. The CTA did not, and does not, have any undue hardship to justify the denial of Johnson's religious exemption/accommodation request.

44. The CTA's failure to provide Johnson a religious exemption/accommodation has harmed and will continue to harm Johnson.

45. Johnson has filed a charge with the EEOC complaining of these discriminatory actions, has received a "Right to Sue" letter, and is filing this complaint within 90 days thereof.

WHEREFORE, Johnson respectfully prays for relief against the CTA as set forth in the Prayer for Relief set out below.

### COUNT II – VIOLATION OF THE FIRST AMENDMENT
### FREE EXERCISE CLAUSE

46. Johnson hereby realleges and adopts each and every allegation in paragraphs 1-37 as if fully set forth herein.

47. The Free Exercise Clause of the First Amendment to the United States Constitution (made applicable to the states by the Fourteenth Amendment) provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof…" U.S. CONST. amend. I.

6

48. The CTA's mandatory vaccine policy substantially burdened Johnson's free exercise of religion by unlawfully conditioning her employment on Johnson abandoning her religious beliefs.

49. The CTA's mandatory vaccine policy was not neutral and generally applicable as the CTA granted at least 36 religious exemption/accommodation requests, but denied a similar request made by Johnson.

50. The CTA engaged in a process of individualized assessments when it reviewed requests for religious exemptions/accommodations.

51. The CTA's termination of Johnson cannot be justified by a compelling governmental interest and is not narrowly tailored to advance any such interest.

WHEREFORE, Johnson respectfully prays for relief against the CTA as set forth in the Prayer for Relief set out below.

### COUNT III – VIOLATION OF FOURTEENTH AMENDMENT EQUAL PROTECTION

52. Johnson hereby realleges and adopts each and every allegation in paragraphs 1-37 as if fully set forth herein.

53. The Equal Protection Clause of the Fourteenth Amendment requires that the government treat similarly situated persons alike.

54. The CTA has violated Johnson's right to equal protection by granting religious exemption/accommodation requests to some similarly situated employees but denying the same to her.

55. The CTA has violated Johnson's right to equal protection by continuing to employ certain bus operators that are not vaccinated, but refusing to continue to employ Johnson on an equal basis.

56. Under the Equal Protection Clause, government actions and laws which burden a fundamental right and treat persons unequally based on an inherently suspect classification are subject to strict scrutiny.

57. The CTA cannot satisfy strict scrutiny.

WHEREFORE, Johnson respectfully prays for relief against the CTA as set forth in the Prayer for Relief set out below.

### COUNT IV – VIOLATION OF THE ILLINOIS HEALTH CARE RIGHT OF CONSCIENCE ACT, 745 ILCS 70

58. Johnson hereby realleges and adopts each and every allegation in paragraphs 1-37 as if fully set forth herein.

59. The Illinois Health Care Right of Conscience Act (the "Act") protects Johnson's rights to engage in the exercise of her sincerely held religious beliefs without fear of discrimination from any entity, whether public or private, including the CTA.

60. In fact, the State of Illinois has declared it to be the public policy of the State to protect the religious conscience rights of all individuals in the State of Illinois as it relates to health care services. The Illinois Health Care Right of Conscience Act provides, specifically,

> The General Assembly finds and declares that people and organizations hold different beliefs about whether certain health care services are morally acceptable. **It is the public policy of the State of Illinois to respect and protect the right of conscience of all persons who refuse to obtain, receive or accept, or who are engaged in, the delivery of, arrangement for, or payment of health care services and medical care whether acting individually, corporately, or in association with other persons; and to prohibit all forms of discrimination, disqualification, coercion, disability or imposition of liability upon such persons or entities by reason of their refusing to act contrary to their conscience or conscientious convictions in providing, paying for, or refusing to obtain, receive, accept, deliver, pay for, or arrange for the payment of health care services and medical care**. It is also the public policy of the State of Illinois to ensure that patients receive timely access to information and medically appropriate care.

745 ILCS 70/2 (emphasis added).

61. In furtherance of the State of Illinois public policy of protecting the religious conscience rights of all Illinoisans to exercise their sincere religious convictions in their medical decision-making, the Illinois Health Care Right of Conscience Act states:

> **It shall be unlawful for any** person, public or **private institution**, or public official **to discriminate against any person in any manner**, including but not limited to, licensing, hiring, promotion, transfer, staff appointment, hospital, managed care entity, or **any other privileges**, **because of such person's conscientious refusal to receive, obtain, accept, perform, assist, counsel, suggest, recommend, refer or participate in any way in any particular form of health care services contrary to his or her conscience**.

745 ILCS 70/5 (emphasis added).

62. The Illinois Health Care Right of Conscience Act further provides:

> **It shall be unlawful for any public or private** employer, entity, agency, **institution**, official or person, including but not limited to, a medical, nursing or other medical training institution, to deny admission because of, to place any reference in its application form concerning, to orally question about, to impose any burdens in terms or conditions of employment on, or to otherwise discriminate against, any applicant, in terms of employment, **admission to or participation in any programs for which the applicant is eligible, or to discriminate in relation thereto, in any other manner, on account of the applicant's refusal to receive, obtain, accept, perform, counsel, suggest, recommend, refer, assist or participate in any way in any forms of health care services contrary to his or her conscience.**

745 ILCS 70/7 (emphasis added).

63. The Illinois Health Care Right of Conscience Act defines "Health care" broadly to include vaccinations. Specifically, it provides that "Health Care":

> means **any phase** of patient care, including but not limited to, **testing**; diagnosis; **prognosis**; ancillary research; **instructions**; family planning, counselling, referrals, or any other advice in connection with the use or procurement of contraceptives and sterilization or abortion procedures; **medication**; surgery or **other care or treatment rendered by a physician or physicians, nurses, paraprofessionals or health care facility**, **intended** for the **physical**, emotional, and mental well-being of persons.

745 ILCS 70/3 (a) (emphasis added).

9

64. The Illinois Health Care Right of Conscience Act defines "Conscience," as "a sincerely held set of moral convictions arising from belief in or relation to God, or which, though not so derived, arises from a place in the life of its possessor parallel to that filled by God among adherents to religious faiths." 745 ILCS 70/3(e).

65. A violation of the Illinois Health Care Right of Conscience Act provides for the following remedies:

> **Any person, association, corporation, entity or health care facility injured by any public or private person, association, agency, entity or corporation by reason of any action prohibited by this Act may commence a suit therefor, and shall recover threefold the actual damages, including pain and suffering, sustained by such person, association, corporation, entity or health care facility, the costs of the suit and reasonable attorney's fees; but in no case shall recovery be less than $2,500 for each violation in addition to costs of the suit and reasonable attorney's fees. These damage remedies shall be cumulative, and not exclusive of other remedies afforded under any other state or federal law**.

745 ILCS 70/12 (emphasis added).

66. The Illinois Health Care Right of Conscience Act acts as a super statute in Illinois, preempting and superseding all other acts and portions of acts that conflict with the explicit policies contained in the statute.

67. Specifically, the Illinois Health Care Right of Conscience Act states: "This Act shall supersede all other Acts or parts of Acts to the extent that any Acts or parts of Acts are inconsistent with the terms or operation of this Act." 745 ILCS 70/14.

68. Even as a public institution, the CTA is subject to the provision of the Illinois Health Care Right of Conscience Act under 745 ILCS 70/5 and 745 ILCS 70/7, and is therefore prohibited from discriminating against Johnson for her refusal to accept one of the vaccines on account of her sincerely held religious beliefs.

69. Johnson's sincerely held religious beliefs, which were articulated to the CTA under the signed written requests required by the mandatory COVID-19 Vaccination Policy, constitutes

10

Johnson's "conscience" under the Act because they are "a sincerely held set of moral convictions arising from belief in or relation to God." 745 ILCS 70/3(e).

70. The COVID-19 vaccines constitute "Health care" under the Act because they are a "phase of patient care," "medication," and "other care or treatment rendered by a physician or physicians, nurses, paraprofessionals or health care facility, intended for the physical, emotional, and mental well-being of persons." 745 ILCS 70/3(a).

71. The Act does not provide any defense to discriminate against Johnson based on so-called "undue hardship." *Rojas v. Martell*, 2020 IL App (2d) 190215, ¶ 43.

72. By imposing its mandatory COVID-19 Vaccination Policy upon Johnson and refusing to grant her a religious exemption from/accommodation related to the mandatory COVID-19 Vaccination Policy, the CTA has impermissibly, unlawfully, and unconscionably discriminated against Johnson because of her conscientious refusal to receive or accept one of the three currently available COVID-19 vaccines in contradiction to her rights of conscience and sincerely held religious beliefs.

73. By taking adverse employment action against Johnson for failure to comply with the mandatory COVID-19 Vaccination Policy, the CTA has impermissibly discriminated against Johnson on account of her sincerely held religious objections to receiving or accepting one of the three COVID-19 vaccines in violation of 745 ILCS 70/5.

74. The mandatory COVID-19 Vaccination Policy, on its face and as applied, is a gross violation of Johnson's sincerely held beliefs, and her right of conscience under the Illinois Health Care Right of Conscience Act.

75. The mandatory COVID-19 Vaccination Policy, on its face and as applied, is an impermissible discrimination against Johnson on the basis of her sincerely held religious beliefs, and

in violation of Johnson's rights of conscience under the Illinois Health Care Right of Conscience Act.

WHEREFORE, Johnson respectfully prays for relief against the CTA as set forth in her Prayer for Relief set out below.

### COUNT V – VIOLATION OF THE ILLINOIS RELIGIOUS FREEDOM RESTORATION ACT

76. Johnson hereby realleges and adopts each and every allegation in paragraphs 1-37 as if fully set forth herein.

77. The Illinois Religious Freedom Restoration Act provides:

"Government may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless it demonstrates that application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling governmental interest."

(775 ILCS 35).

78. The CTA's mandatory vaccine policy substantially burdened Johnson's exercise of religion by conditioning her employment on Johnson abandoning her religious beliefs.

79. The CTA cannot meet its burden of demonstrating that its termination of Johnson was in furtherance of a compelling governmental interest and that it was the least restrictive means of furthering that interest.

WHEREFORE, Plaintiff respectfully prays for relief against the CTA as set forth in her Prayer for Relief set out below.

### COUNT VI: VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT

80. Johnson hereby realleges and adopts each and every allegation in paragraphs 1-37 as if fully set forth herein.

81. The Illinois Human Rights Act provides:

> It is a civil rights violation: …[f]or any employer to impose upon a person as a condition of …retaining employment…any terms or conditions that would require such person to violate or forgo a sincerely held practice of his or her …religion…unless, after engaging in a bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the employee's….sincerely held religious belief, practice or observance without undue hardship on the conduct of the employer's business."

775 ILCS 5/2-102(E-5).

82. The CTA's mandatory Vaccination Policy imposed upon Johnson a condition of employment that required her to violate or forgo her sincerely held religious beliefs.

83. Johnson informed the CTA of those beliefs and requested an exemption/accommodation from the vaccine mandate.

84. The CTA denied her exemption/accommodation request without engaging in a *bona fide* effort to determine whether an accommodation was possible.

85. Granting her an exemption/accommodation would not have caused the CTA undue hardship.

86. The CTA's actions have harmed and will continue to harm Johnson.

87. Johnson filed a charge with the Illinois Department of Human Rights complaining of these discriminatory actions, received a "Right to Sue" letter, and is filing this complaint within 95 days thereof.

WHEREFORE, Johnson respectfully prays for relief against the CTA as set forth in the Prayer for Relief set out below.

## JURY DEMAND

Johnson demands a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Johnson respectfully prays for relief as follows: that the CTA be found liable, that judgment be entered against it, and that Johnson be awarded all remedies to which she is entitled under the law, including:

a. back pay, including lost benefits;
b. front pay, including benefits (or reinstatement);
c. compensatory damages, including for emotional distress;
d. actual damages in an amount to be proven at trial (but not less than $2,500 per violation, as provided by 745 ILCS 70/12);
e. treble her actual damages, including those for emotional distress and pain and suffering, as provided by 745 ILCS 70/12;
f. reasonable costs and expenses of this action, including reasonable attorneys' fees and expert fees; and
g. such other and further relief as the Court deems equitable and just under the circumstances.

Respectfully Submitted by,

/s/ Julie Herrera

Law Office of Julie O. Herrera
159 N. Sangamon St., Ste. 200
Chicago, IL 60607
312-479-3014 (Phone)
708-843-5802 (Fax)
jherrera@julieherreralaw.com


/s/ Sorin A. Leahu

Leahu Law Group, LLC
53 W. Jackson Blvd, Suite 1527
Chicago, IL 60604
Telephone: (847)-529-7221
sleahu@leahulaw.com

Date: 1/6/23